UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:07-CR-02 |
| V. ) | District Judge Greer |
| ) | Magistrate Judge Inman |
| GERALD DAVID ALLEN II ) | |
| MICHAEL C. WEBB ) | |
| STEVE A. WATSON ) | |

## REPORT AND RECOMMENDATION

The defendants are charged in Count 2 of the indictment with a violation of 7 U.S.C. § 2156(a), a Class A misdemeanor. The defendant Allen is also charged with a felony in Count 1. The defendant Webb has filed a motion to dismiss the indictment, i.e., Count 2, on the basis of "prosecutorial vindictiveness." (Doc. 42). The defendant Watson has been allowed to join in that motion. Pursuant to the standing order of this Court and 28 U.S.C. § 636, those motions have been referred to the magistrate judge for a report and recommendation. A hearing was held on November 6, 2007.

The thrust of defendants' motion is that the United States Attorney is prosecuting them only because they earlier refused to plead guilty to state misdemeanor charges which concerned the same conduct, but which have far less serious punishment upon conviction than the federal charges. The facts are undisputed.

In 2005 and for some period of time prior thereto, the Federal Bureau of Investigation

had been investigating public corruption in Cocke County, Tennessee, part of which involved cock fighting exhibitions. On June 11, 2005, FBI and other federal law enforcement agents, as well as agents of the Tennessee Bureau of Investigation and the Tennessee Highway Patrol, executed a federal search warrant for the premises known as the Del Rio Cock Fight Pit in Cocke County, Tennessee. Knowing that the warrant would be executed when people would be present at the pit, the United States Attorney and the state District Attorney General for the Fourth Judicial District agreed that the Highway Patrol officers would issue state misdemeanor citations to those people on the premises when the warrant was executed, charging them with either being a participant in a cock fight in violation of Tenn. Code Ann. § 39-14-203(a)(1), or being a spectator at a cock fight in violation of Tenn. Code Ann. § 39-14-203(a)(4), depending on the circumstances. Most of the state citations were issued for violation of Tenn. Code Ann. § 39-14-203(a)(4), the spectator offense.[1] The vast majority of people who were given the state misdemeanor citations pleaded guilty by paying a modest fine of $50.00. However, six individuals, including the defendants Webb and Watson, elected to contest the charges. As a result, on November 8, 2005, the Cocke County Grand Jury indicted those six people for the same state misdemeanor charge.

On January 9, 2006, a federal Grand Jury indicted the six individuals under 7 U.S.C. §

---

[1] Citations were not issued to those individuals who were allegedly involved in the actual operation of the pit inasmuch as it was planned at the outset to bring federal charges against those individuals under the federal gambling statute, 18 U.S.C. § 1955, a felony.

2156(a), a Class A misdemeanor.[2]  This decision was a pragmatic one, based on the fact that the evidence necessary to prove the defendants' guilt was the testimony of federal law enforcement agents or informants working under the direction of those federal law enforcement agents. Additionally, the United States Attorney's Office had more resources than did the office of the state District Attorney General, especially money; one of the essential witnesses was a retired FBI agent now living in Montana.

On January 22, 2007, Attorney Joseph Baker, who represented all six people, wrote a letter to Assistant United States Attorney Neil Smith, stating that his clients intended to enter guilty pleas to the state charge of being spectators at a cock fight.  Attorney Baker further stated that it was his understanding that those who entered a guilty plea to the state charge would not be federally prosecuted.[3]

On February 12, 2007, four of the six people indeed did enter guilty pleas to the state charges.  Mr. Watson, however, did not appear at the appointed time and for that reason did not enter a guilty plea.  Mr. Webb did appear before the state court, but he changed his mind and declined to plead guilty.  According to their attorneys, it was the intent of both men to demand trial by jury at the urging of the state judge. With respect to the four individuals who did enter pleas of guilty, the presiding state judge, over the stout objections of the District Attorney General, placed those defendants on judicial diversion.[4]

---

[2]Gerald Allen was also indicted for operating an illegal gambling business in violation of 18 U.S.C. § 1955.  (Count 1).

[3]Ex. 1 to Government's Response, Doc. 44.

[4]Judicial Diversion is essentially a sentence of probation, after completion of which the conviction is expunged.  Tenn.Code Ann. § 40-35-313.

Based upon their pleas of guilty before the state court, on July 10, 2007, the United States moved to dismiss the federal charges against those four defendants, which this court granted.[5]

On August 2, 2007, Watson and Webb appeared before this court for their initial appearance on the federal indictment. Shortly thereafter, Webb's attorney, Mr. Poole, asked AUSA Smith if the federal charges would be dismissed if Webb and Watson pled guilty to the pending state misdemeanor charges. On September 20, 2007, AUSA Smith agreed that the United States would dismiss the federal charge if Webb and Watson plead guilty to the state misdemeanor charges, *with one critical caveat*: the defendants could not seek or accept diversion, otherwise the federal charges would not be dropped.[6]

On September 21, 2007, attorney Poole wrote AUSA Smith that there was no reason that his client should affirmatively reject judicial diversion in state court in light of the fact that the other four individuals (including his wife and son) received diversion. Since Mr. Webb did not intend to reject judicial diversion, attorney Poole advised AUSA Smith that he could not recommend to Mr. Webb that he enter a plea of guilty to the state charges since the United States indicated that it would pursue federal prosecution if the state judge granted judicial diversion and Mr. Webb accepted it.[7]

On September 24, 2007, AUSA Smith responded to attorney Poole by pointing out the following:

(1) On February 12, 2007, Webb had the opportunity to plead guilty before the state judge,

---

[5] Docs. 9 and 10.

[6] Ex. H to Motion to Dismiss, Doc. 42.

[7] Ex. I, Doc. 42.

4

and receive judicial diversion as did the four co-defendants, but he eschewed the opportunity;

(2) In the months following, the United States expended additional resources, and obtained additional evidence regarding Webb's involvement in the cock fighting activity;

(3) That if there was any unfairness involved, in reality it was the state judge's decision to place the four individuals on judicial diversion when many other defendants previously had paid their fines and thus were denied the opportunity to receive diversion.

AUSA Smith ended his letter to attorney Poole by allowing Mr. Webb through September 27, 2007, to plead guilty to the state charges on the condition that he not seek nor accept judicial diversion. AUSA Smith also advised attorney Poole that, if Mr. Webb disdained that offer, he would request the District Attorney General to dismiss the pending state charge so that entering a plea in that jurisdiction would no longer be an option and the "dual prosecution" policy of the United States Department of Justice would no longer be a factor to consider.[8]

Mr. Webb (and of course, Mr. Watson) declined to enter pleas of guilty to the state charges under the conditions imposed by AUSA Smith. As a result, AUSA Smith followed through on his promise to request the District Attorney General to dismiss the state charges. The state District Attorney General did so, without notice to Mr. Webb or his counsel, leaving the defendants Webb and Watson with no charge to which they could plead guilty except the pending federal charge.

Mr. Webb's counsel verbally represented that he had been assured by the state judge that he

---

[8]Ex. J, Doc. 42. This internal policy of the Department of Justice has nothing to do with either double jeopardy or "dual sovereignty." Rather, if both the state and federal governments are prosecuting a defendant for the same transaction, and if the state obtains a conviction on its charges before the federal government obtains a conviction on its charges, the dual prosecution policy requires the United States Attorney to seek permission of the Department of Justice before proceeding further.

is willing to set aside the order of dismissal and allow Webb (and, presumably, Mr. Watson) to plead guilty to the original state misdemeanor charges. Implicit therein is the probability that the state judge will grant diversion to these defendants.

Mr. Webb complains that AUSA Smith's action in refusing to dismiss this federal prosecution and allow him to plead guilty to the state charge is vindictive and warrants the dismissal of the indictment. Defendants argue that the charge they faced in state court was a Class C misdemeanor under Tennessee law; the maximum punishment they faced was 30 days in jail and a $50.00 fine. Now they confront a maximum sentence of one year of incarceration and a $15,000.00 fine. They also argue that the United States' continued prosecution of this case is vindictive and in retaliation for the exercise of their right to a jury trial in state court. Lastly, Webb suggests that the United States' refusal to allow him to accept judicial diversion, which his wife and son received, is so unfair as to constitute vindictiveness. Defendants' attorneys candidly acknowledged that they could find no cases to support their position.

Claims of vindictive prosecution usually arise in a post-trial setting. *See, e.g., North Carolina v. Pearce*, 395 U.S. 711 (1969), in which the Supreme Court held that it was a violation of due process to impose a greater sentence upon a defendant after his conviction upon a retrial subsequent to a reversal of his first conviction. The principle underlying *Pearce* and similar cases is that "[punishing] a person because he has done what the law plainly allows him to do is a due process violation . . . ." *United States v. Goodwin*, 457 U.S. 368 (1982).

Messrs. Webb and Watson argue that the United States is punishing them for doing what they had a right to do: plead not guilty to the state charges and proceed to trial, with or without a jury. But there is a critical difference between the facts before this court and those in *Pearce, supra*,

and similar cases. Here, the conditions imposed by the United States arose in a pretrial context and as part of plea negotiations, albeit unusual plea negotiations. Rather than demanding that the defendants plead guilty to the charges in this court, the United States demanded that the defendants plead guilty to charges pending in a state court. Moreover, the United States imposed conditions upon that guilty plea - that they neither seek nor accept judicial diversion. But the fact remains that these were plea negotiations, because the *quid pro quo* for the defendants' guilty pleas in state court was the dismissal of the federal prosecution. The defendants always had the choice of accepting the demand of the United States Attorney's Office or going to trial on the federal charges.

It is beyond argument that if the defendants committed the acts with which they are charged, they violated 7 U.S.C. § 2156. It also is undeniable that there is no constitutional impediment to the prosecution of these defendants in federal court, notwithstanding they had also been charged with analogous state offenses. *See, United States v. Lanza*, 260 U.S. 377 (1922). Thus, this case was and is the same as any other criminal case before this court. To state the obvious, plea negotiations in a criminal case are an option, not a requirement, and if either party does not wish to engage in negotiations they cannot be compelled to do so.

Offers made by the prosecution during pretrial plea negotiations are starkly different from post-trial prosecutorial decisions as far as claims of vindictive prosecution are concerned. There are several cases closely on point to the case before this court.

In *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), a case which arose in the Sixth Circuit, the defendant was indicted for uttering a forged instrument, an offense for which the punishment was a term of imprisonment of two to ten years. During plea negotiations, the state prosecutor offered

to recommend a sentence of five years if the defendant pleaded guilty to the indictment. That offer was accompanied by an unequivocal threat: the prosecutor told the defendant that if he did not plead guilty, he would return to the Grand Jury and seek to have defendant indicted as a habitual criminal. The defendant declined the prosecutor's offer, and he subsequently was indicted under the state Habitual Criminal Act. Upon conviction, he was sentenced to life in prison. The defendant ultimately filed a petition for a federal writ of habeas corpus, which the district court denied. The Sixth Circuit Court of Appeals reversed, holding that the defendant could not be imprisoned any longer than he could have been if convicted on the charge in the original indictment. The Supreme Court reversed, noting that the Court of Appeals seemed to have held "that a prosecutor acts vindictively and in violation of due process of law whenever his charging decision is influenced by what he hopes to gain in the course of plea bargaining negotiations." 434 U.S. at 361. After discussing its prior holding in *Pearce* that punish-ing a person for doing what the law allows him to do is a clear violation of due process, the court pointed out that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id.,* 363.

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a Grand Jury, generally rests entirely within his discretion. Within the limits set by the Legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

*Id.*, 364 (internal footnotes omitted).

In *United States v. Forrest*, 402 F.3d 678 (6th Cir. 2005), the defendant and two

companions robbed a convenience store, brandishing firearms as they did so. The defendant Forrest thereafter was indicted by a Kentucky Grand Jury for first degree robbery. He pleaded not guilty to that indictment. Subsequently, he was indicted by a federal Grand Jury for a Hobbs Act robbery, and with brandishing firearms during a crime of violence. *It was undisputed that the federal indictment was the result of the defendant's refusal to plead guilty to the prior state indictment.* 402 F.3d at 683.

After he was convicted on the federal charges, the defendant essentially requested a downward departure under the Sentencing Guidelines because his case was "atypical;" the atypicality of course was the fact that the federal prosecution was initiated in retaliation for his refusal to plead guilty to the state indictment. In holding that the case was *not* atypical for sentencing purposes, the Sixth Circuit stated:

> The district court was concerned in this case about "the suggestion of punitive federal prosecution." We fully understand the basis for the court's concern. Again, however, the motivation of the prosecutor has no bearing, as far as we can see, on the typicality of the defendant's misconduct. For what it may be worth, moreover, we note that just as a "decision to prosecute [the defendant] under a statute with a 'severe' penalty is not cause for a downward departure," *see, United States v. Reed*, 264 F.3d 640, 650 (6th Cir. 2001), **a federal indictment obtained against one who has been threatened with federal prosecution for refusing to plead guilty to state charges is not subject to dismissal on grounds of "vindictive prosecution**." *See, United States v. Williams*, 47 F.3d 658, 661 (4th Cir. 1995) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 358-59, 365, 98 S.Ct. 663, 54 L.Ed.2d, 604 (1978) (no prosecutorial vindictiveness in charging the defendant under a recidivist statute carrying a mandatory life term after the defendant has refused to plead guilty to original charges that carried a sentence of two to 10 years)).

*Id.* 691. (Bold-face type added).

The court's footnote to the above quote also is relevant:

> [4] It is worth noting also that under the Supreme Court's long-standing "dual sovereignty" doctrine . . ., the Double Jeopardy Clause of the US Constitution would not have barred prosecutions of [defendant] by both the federal government and the state government for his conduct at the convenience store. It follows, in our view, that the district court's assessment of this conduct at sentencing should not depend on the charging decisions made by the two sovereigns.

*Id.* (Internal citation omitted).

In summation, the United States Government was free to prosecute these defendants in district court for violations of federal law, regardless that they also were being prosecuted in state court for the same actions. The offer of the United States Attorney to these movant-defendants that the federal charge against them would be dismissed if they pleaded guilty to the state charge, on the condition that they not accept judicial diversion, was nothing more than an offer made in the course of plea bargaining which the defendants could accept or reject as they deemed prudent. Obviously, they rejected the United States' offer, as a result of which this prosecution is proceeding. Under *Bordenkircher*, *supra*, the condition imposed by the United States for dismissal of this action was not a denial of the defendants' due process rights.

It is respectfully recommended that the motions to dismiss be denied.[9]

Respectfully submitted,

---

[9] Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

s/ Dennis H. Inman
United States Magistrate Judge